DANIEL J. MULLIGAN, SBN 103129
JENKINS MULLIGAN & GABRIEL LLP
10085 Carroll Canyon Road, Ste. 210
San Diego, CA 92131
Telephone:  (415) 982-8500
Facsimile:  (415) 982-8515
Email:       dan@jmglawoffices.com

ERIC ANDREW MERCER, SBN 248707
LAW OFFICE OF ERIC ANDREW MERCER
770 L Street Suite 950
Sacramento, CA 95814
Telephone:  (916) 361-6022
Facsimile:  (916) 361-6023
Email:       mercerlegal@me.com

Attorney for Plaintiff, and the putative class

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FLINT W. MURFITT, individually, on behalf of all others similarly situated, and on behalf of the general public;<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:13-cv-01182-JGB (SPx)<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date: September 23, 2013<br>Time: 9:00 a.m.<br>Courtroom: 1<br>Judge: Hon. Jesus G. Bernal<br><br>(Plaintiff's Request for Judicial Notice, Declaration In Support of Plaintiff's Request for Judicial Notice filed concurrently herewith) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................2

   A. THE HOME AFFORDABLE MODIFICATION PROGRAM ..................2

      1.  Servicer Actions Under HAMP Must Comply with ECOA ..................2

      2.  HAMP and ECOA Written Notice Requirements .......................3

      3.  "Complete" Application Under the Guidelines ........................5

   B. MURFITT APPLICATION HISTORY .......................................6

III. ARGUMENT...........................................................................................7

   A. PLAINTIFFS STATE AN ECOA CLAIM ...................................8

      1.  Bank of America is a Creditor under and Requests for Modification
   are Applications under ECOA ...............................................10

      2.  Bank of America violated ECOA by Failing to Provide Proper Notice
   Within 30 days of Plaintiff's Applications .................................11

      3.  Even if Plaintiff's Application was Incomplete, Bank of America
   violates ECOA by Failing to Provide a Notice of Incompleteness ...................11

      4.  Bank of America violated ECOA by Failing to Provide a Statement of
   Reasons for its Adverse Actions.............................................14

      5.  Plaintiff Properly Alleges Damages Under ECOA ...............................14

   B. PLAINTIFF STATES A UCL CLAIM ........................................8

      1.  Plaintiff Properly Alleges Injury-in-Fact..................................19

      2. Plaintiff Sufficiently Alleges "Unlawful" and "Unfair" Practices Under
   the UCL ..........................................................................21

      3. BOA Raises the "End Run" Theory Squarely Rejected by the Seventh
   Circuit..........................................................................23

IV. CONCLUSION ......................................................................................24

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. Or. 1982)............17

*Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1025 (N.D. Cal. 2006)...9

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ......................................7, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .......................................8

*Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1341 (11th Cir. 2000)......19

*California Service Station etc. Assn. v. Union Oil Co.* 232 Cal.App.3d 57 (1991) .18

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th
   163, 180 (1999)........................................................................22

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ...................................19

*Davis v. Scherer*, 468 U.S. 183 (1984) ......................................................7

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992)...........................8

*Dufay v. Bank of America*, 94 F.3d 561 (9th Cir. 1996) ......................................9, 13

*Errico v. Pacific Capital Bank*, 753 F. Supp. 2d 1034, 1042 (N.D. Cal. 2010)..9, 11,
   14

*Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011) ...............10

*Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983)9, 17

*Fletcher v. OneWest Bank, FSB*, 798 F. Supp. 2d 925 (N.D. Ill. 2011) .................23

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896,
   904 (N.D. Cal. 2008) .............................................................................8

*Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 908 (Cal. App. 1st
   Dist. 2013) ........................................................................................22

*Juarez v. Suntrust Mortg., Inc.*, 2013 U.S. Dist. LEXIS 67850 (E.D. Cal. May 13,
   2013).................................................................................................21

*Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002) ......................................19

*Madrid v. Perot Systems Corp.,*130 Cal.App.4th 440, 463 (2005) .........................18

*Ortega v. Wells Fargo Bank, N.A.*,2012 U.S. Dist. LEXIS 11409 (N.D. Ohio Jan.

31, 2012) ...................................................................................................15

*Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir.1988) ...................................8

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994)......................8

*People v. Toomey*, 157 Cal.App.3d [1,] 20 (1984) ..............................................18

*Piotrowski v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 14438 (D. Md. Jan. 22, 2013) ...............................................................................................15

*Rubio v. Capital One Bank,* 613 F.3d 1195, 1204 (9th Cir. 2010) .........................20

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)..................................................................7

*Schlegel v. Wells Fargo Bank*, 720 F.3d 1204 (9th Cir. Cal. 2013)...............9, 15, 16

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ......................................................................................................8

*Starr v. Baca*, 652 F.3d 1202, 1212-16 (9th Cir. 2011) ..........................................24

*Thompson v. Galles Chevrolet Co.*, 807 F.2d 163, 166 (10th Cir. 1986) .................9

*Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1346 (2009) ....................20

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) .........8

*West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 306 (Cal. App. 4th Dist. 2013) ........................................................................................21, 22, 24

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581-585 (7th Cir. Ill. 2012) .......23

**STATUTES**

. 15 U.S.C. § 1691(a)........................................................................................8, 10

12 C.F.R. § 202.2 .......................................................................................10, 11, 14

12 C.F.R. § 202.9 ...............................................................................5, 9, 11, 13

15 U.S.C. § 1691(d)(1)...................................................................................11

15 U.S.C. § 1691b(a)..........................................................................................3

15 U.S.C. § 1691e ............................................................................................16

**RULES**

Fed. R. Civ. P. 12(b)(6)....................................................................................7

## I.    INTRODUCTION

Mr. Murfitt's complaint ("Complaint") details a three-year history of Kafkaesque dealings with Defendant, Bank of America, N.A. ("Bank of America"). Mr. Murfitt suffering a reduction of income, applied over the telephone for a modification of his home loan.  He provided all of the requested financial information, including information related to income and expenses, and he provided all further information requested including his current hardship due to the reduction of income.  A Bank of America employee told Mr. Murfitt that he qualified for a modification and that his trial modification documents would arrive in the mail shortly.  He did not receive trial modification documents until three years later. Instead, Mr. Murfitt suffered three years of misinformation regarding the status of his applications and duplicate requests for information previously provided.

The Complaint details allegations that Bank of America failed to provide notices in accordance with the Equal Credit Opportunity Act ("ECOA") designed to allow rejected credit applicants to learn where and how their credit status is deficient and also to provide applicants a chance to rectify misinformation or inadequate information.  By failing to provide these notices, Bank of America unnecessary prolonged an application process designed to last thirty days to over three years.  By doing so Bank of America also unfairly enriched itself by the imposition of late fees, other default fees, and increased interest over the three years.  Mr. Murfitt brings this action individually, behalf of all others similarly situated, and on behalf of the general public for damages and to stop Bank of America from engaging in these unfair business practices.

Bank of America brings the present motion to dismiss Mr. Murfitt's complaint under federal rule of civil procedure 12(b)(6) ("Motion").  Bank of America argues that it did not need to provide any notices to Mr. Murfitt because his applications for modification were incomplete.  Bank of America is wrong. As detailed below, ECOA requires that Bank of America provide one of three notices

within 30 days (1) an incomplete application notice; (2) an approval notice; or (3) an adverse action notice.  The Complaint is clear that Bank of America failed to provide such notices on at least five occasions.  Further, when Bank of America takes an adverse action, which the Complaint alleges it did four times, it must provide applicants with a statement of reasons for the denial if requested.  Despite Mr. Murfitt's requests, Bank of America did not respond to his requests for a statement of reasons.  Bank of America's arguments that it did not take any adverse actions are unavailing.  They denied four applications for modification, which are adverse actions, and failed to provide a sufficient statement of reasons so that he could learn the reason for his denial and rectify misinformation for inadequate information, the congressional rationale for the notice requirements of ECOA.  As a result of these violations, Mr. Murfitt is entitled to bring this action for damages including actual damages, statutory damages, and attorneys fees under ECOA.

Mr. Murfitt also brings a claim under California's Unfair Competition Law ("UCL") for unfair business practices including failing to provide notices in accordance with ECOA and the Home Affordable Modification Program ("HAMP"); and also for misstatements about the status of his applications for modification and other loan modification misconduct by Bank of America.  Bank of America makes many arguments for dismissal of the claim, but controlling Ninth Circuit and California Appellate law allow for a claim for violation under HAMP under the UCL.

Since Mr. Murfitt properly alleges both an ECOA claim and a UCL claim, this Court should deny Bank of America's Motion in its entirety.

## II.   BACKGROUND

### A.   THE HOME AFFORDABLE MODIFICATION PROGRAM

#### 1.   Servicer Actions Under HAMP Must Comply with ECOA

Since at least April 6, 2009, pursuant to Supplement Directive 09-01, servicers providing Home Affordable Modification Program ("HAMP")

modifications were required to follow uniform guidelines.   Further, from the initiation of the program, HAMP directives have made clear that servicers "…must be aware of, and in full compliance with, all federal, state, and local laws (including statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial rulings and opinions) – including but not limited to…" Section 5 of the Federal trade Commission Act, the Equal Credit Opportunity Act ("ECOA"), the Real Estate Settlement Procedures Act, and the Fair Debt Collection Practices Act. SD 09-01, Mercer Declaration, Exh. 1.

Specifically, HAMP directives require that written notices must be provided in accordance with the Equal Credit Opportunity Act.  Supplemental Directive 09-08 provides:

> A servicer must send a Borrower Notice to every borrower that has been evaluated for HAMP but is not offered a Trial Period Plan, is not offered an official HAMP modification, or is at risk of losing eligibility for HAMP because they have failed to provide required financial documentation. The written notices must comply with all laws, rules and regulations including but not limited to, the Equal Credit Opportunity Act, when applicable to the transaction.

SD 09-08, Mercer Declaration, Exh. 2.

The Equal Credit Opportunity Act, in turn, delegates to the Federal Reserve Board the power to implement regulations in furtherance of carrying out the Act's purpose. 15 U.S.C. § 1691b(a). These regulations, known as "Regulation B", are found under 12 C.F.R. §§ 202.1-202.15. The Federal Reserve Board confirmed on December 4, 2009 that servicers actions under HAMP are subject to Regulation B. *See* Federal Reserve Bd., Division of Consumer & Regulatory Affairs, Publ'n No. CA-09-13, Stoll Declaration, Exh. A.

## 2.     HAMP and ECOA Written Notice Requirements

HAMP requires written notices within ten business days ("10-day-notice") and within thirty calendar days after receipt of an Initial Package.  The 10-day-

notice acknowledges receipt of the Initial Package and describes the evaluation process and timeline.

> 4.5 Acknowledgment of Initial Package
>
> Within 10 business days following receipt of an Initial Package, the servicer must acknowledge in writing the borrower's request for HAMP participation by sending the borrower confirmation that the Initial Package was received and a description of the servicer's evaluation process and timeline.

MHA v.1.0, Mercer Declaration, Exh. 3.

Within thirty calendar days the servicer must provide one of three notices: (1) an Incomplete Information Notice, (2) a TPP Notice, or (3) a Non-Approval Notice. The TPP Notice is effectively an approval notice, advising the borrower that they qualify for HAMP and provides conditions where, if met, would lead to a permanent modification.

> 4.6 Review of Initial Package
>
> Within 30 calendar days from the date an Initial Package is received, the servicer must review the documentation provided by the borrower for completeness and determine whether to respond with an Incomplete Information Notice, a TPP Notice or a Non-Approval Notice. If the documentation is incomplete or insufficient for use in underwriting, the servicer must send the borrower an Incomplete Information Notice in accordance with the guidance set forth in Section 2.3.3.

MHA v.1.0, Mercer Declaration, Exh. 3.

The three HAMP notices that must be provided within thirty calendar days mirror the notice requirements of ECOA and Regulation B. Under ECOA, within thirty days of receiving a completed application for credit, a creditor shall notify the applicant of its action on the application (*e.g.* approval or nonapproval). 15 U.S.C. § 1691(d)(1). In regard to incomplete applications, "[w]ithin 30 days after receiving an application that is incomplete regarding matters that an applicant can complete, the creditor shall notify the applicant either: (i) Of action taken, in

1  accordance with paragraph (a) of this section [*e.g.* approval or nonapproval]; or (ii)

2  Of the incompleteness, in accordance with paragraph (c)(2) of this section." 12

3  C.F.R. § 202.9(c).  These notices must be in writing.  12 C.F.R. § 202.9(a)(2).

4  Therefore, under both HAMP and ECOA, one of three written notices must

5  be provided within thirty days of application: (1) an incomplete application notice;

6  (2) an approval notice; or (3) a nonapproval notice.

7  **3.  "Complete" Application Under the Guidelines**

8  HAMP guidelines also provide uniform guidance regarding the information a

9  borrower must provide to be considered under HAMP.  "A borrower will be

10  deemed to have requested consideration for HAMP when a complete Initial

11  Package (i.e., RMA, Form 4506T-EZ, required evidence of income) is received by

12  the servicer…."  SD10-02, Mercer Declaration, Exh. 4.

13  For all TPPs with effective dates on or after June 1, 2010,[1] a servicer

14  may evaluate a borrower for HAMP only after the servicer receives the
following documents, subsequently referred to as the "Initial

15  Package". . . .The Initial Package includes:

16  • RMA Form,

17  • IRS Form 4506-T or 4506T-EZ,
• Evidence of income, and

18  • Dodd-Frank Certification (beginning January 1, 2011).

19  MHA v.1.0,[2] Mercer Declaration, Exh. 3.

20  Three of the four requirements of the Initial Package are simple forms to

21  complete.  Evidence of income is also subject to strict guidelines under HAMP and

22  "servicers may not require verification documentation in addition to the

23  documentation listed below unless the servicer determines that additional

24  documentation is necessary to resolve discrepancies between the RMA, tax

25

26  [1] Prior to June 1, 2010, a servicer could, at its option, accept a verbal application over the
telephone that included the borrower's statement regarding income and expenses to be later

27  verified with documentation after approval of a trial period plan.
[2] Although program guidance changes periodically, these provisions remain unchanged during the

28  applicable times identified in the Complaint.

1   documents and income documentation."

2   All of these laws and directives were applicable to Plaintiff's applications for

3   a loan modification.

4   ## B.   MURFITT APPLICATION HISTORY

5   Mr. Murfitt made five separate applications for a modification.  Complaint at

6   ¶ 66. The first was on December 11, 2009 where he provided all of the financial

7   information requested verbally over the telephone.  Complaint at ¶ 14.  At that time

8   he was informed he was preapproved for a modification (which is only possible if

9   Mr. Murfit provided all of the information needed to determine whether he

10  qualified for a trial modification, *i.e.* a complete application). *Id*.  Mr. Murfitt

11  received no written notice of any action by defendant within 30 days of this

12  application.

13  The second application occurred shortly after April 13, 2010 where he

14  provided all of the information requested and all of the information required under

15  HAMP by April 19, 2010.  Complaint at ¶ 18.  Mr. Murfitt received no written

16  notice of any kind from defendant within 30 days of either date.  Mr. Murfitt did,

17  however, receive an email confirming he had been approved for a trial modification

18  on March 20, 2010 (which is only possible if the application had been complete).

19  Complaint at ¶ 19.

20  The third application occurred on August 10, 2010 when Mr. Murfitt

21  provided all of the documents requested.  Complaint at ¶ 26.  Mr. Murfitt received

22  no written notice of any kind within 30 days of this application.  On August 27,

23  2010 a Bank of America employee represented to Mr. Murfitt that he would receive

24  his trail loan modification document within thirty days (which can only happen

25  after a complete application is submitted and the borrower approved).  Complaint at

26  ¶ 28.  On September 20, 2010 Mr. Murfitt did receive a letter from Bank of

27  America.  Complaint at ¶ 30.  But this letter appears to be the 10-day-notice

28  described section II.A.2. above., instead of the ECOA compliant notice to be

1    provided within thirty days.

2         The fourth application occurred on January 29, 2011 when a nonprofit

3    housing counselor assessed that Mr. Murfitt qualified for a HAMP modification

4    under the guidelines and submitted all of the required materials.  Complaint at ¶ 36.

5    Mr. Murfitt received no written response to this application within the required 30

6    days.

7         The fifth application occurred on March 25, 2012 when plaintiff again

8    submitted a new application with the assistance of the nonprofit housing counselor

9    that included all of the required information under HAMP.  Complaint at ¶ 41.

10   That Mr. Murfitt qualified for a modification is indisputable as he did eventually

11   received a modification.  Complaint at ¶ 49. Mr. Murfitt received no written

12   response to this application within 30 days.

13        Finally, on September 7, 2012 Mr. Murfitt received the trial plan that had

14   been promised many times and as early as December 9, 2009, almost three years

15   earlier (under a program designed to take thirty days to complete).  Complaint at ¶¶

16   14, 47.  Mr. Murfitt's March 25, 2012 application must have been complete or he

17   would not have received the trial period plan.

18   **III.   ARGUMENT**

19        Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss

20   a complaint only if it fails to state a claim upon which relief can be granted. Fed. R.

21   Civ. P. 12(b)(6). The question is not whether a plaintiff will prevail in the action,

22   but whether it is entitled to offer evidence in support of its claim. *See Scheuer v.*

23   *Rhodes*, 416 U.S. 232 (1974), overruled on other grounds, *Davis v. Scherer*, 468

24   U.S. 183 (1984).

25        District courts must consider whether non-conclusory allegations "plausibly

26   give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950

27   (2009). To survive a Rule 12(b)(6) motion, a complaint need not contain detailed

28   factual allegations; rather, it must plead "enough facts to state a claim to relief that

is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994) (courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them"); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (at pleading stage, plaintiffs "need only show that the facts alleged, if proved, would confer standing upon him")(citations omitted).

On a Rule 12 motion the Court may only consider "the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir.1988). *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) (denying a motion to dismiss where the defendant argued in a declaration that claims against him were time-barred).

When the complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992).

## A.   PLAINTIFF STATES AN ECOA CLAIM

The Equal Credit Opportunity Act ("ECOA") makes it unlawful to discriminate against an applicant on the basis of on the basis of race, color, religion, national origin, sex or marital status, or age; and because all or part of the applicant's income derives from any public assistance program.  15 U.S.C. § 1691(a).

One way that ECOA effectuates this goal is through its strict notice requirements.  *See Schlegel v. Wells Fargo Bank*, 720 F.3d 1204 (9th Cir. Cal.

2013).  These strict notice provisions are designed to fulfill the twin goals of consumer protection and education. *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983); *see also Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1025 (N.D. Cal. 2006) (ECOA is meant "to protect credit applicants and debtors from arbitrary denial or termination of credit").

The Fifth Circuit emphasized the legislature's rationale for the strict notice requirement:

> As explained in the Senate report accompanying the 1976 amendments to the ECOA, Congress viewed the strict notice requirement as:  "a strong and necessary adjunct to the antidiscrimination purpose of the legislation, because if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Also allows rejected credit applicants to learn where and how their credit status is deficient.  The notice also provides an applicant a chance to rectify misinformation or inadequate information."

*Fischl,* 708 F.2d at 146.

It is well established that violations of ECOA's notice requirements provide a cause of action independent of any claims of discrimination. *See Dufay v. Bank of America*, 94 F.3d 561 (9th Cir. 1996)(notice violations alone support an ECOA claim); *Errico v. Pacific Capital Bank*, 753 F. Supp. 2d 1034, 1042 (N.D. Cal. 2010)(procedural violations of the notice requirements provide a cause of action under ECOA); *Thompson v. Galles Chevrolet Co.*, 807 F.2d 163, 166 (10th Cir. 1986)(violation of ECOA regardless of whether defendant engaged in any discriminatory acts).  When a creditor fails to provide the required notices, the applicant may sue for a violation of ECOA.  *See* 15 U.S.C. § 1691e; *see also Schlegel,* 720 F.3d at 1204 (*citing with approval Thompson v. Galles Chevrolet Co.*, 807 F.2d at 163).

Under ECOA and Regulation B, within thirty days after receipt of a completed application for credit, a creditor shall notify an applicant of its actions on the application. 15 U.S.C. § 1691(d)(1); 12 C.F.R. § 202.9(a)(1).  If the application is incomplete, a creditor [w]ithin 30 days after receiving an application that is

incomplete regarding matters that an applicant can complete, the creditor shall notify the applicant either: (i) Of action taken, in accordance with paragraph (a) of this section; or (ii) Of the incompleteness, in accordance with paragraph (c)(2) of this section." *Id*. at § 202.9(c).  This notice must be in writing.  *Id*. at § 202.9(c)(2). If an adverse action is taken, "each applicant against whom a adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2).  This notice must be in writing.  12 C.F.R. § 202.9(a)(2).

### 1.      Bank of America is a Creditor under and Requests for Modification are Applications under ECOA

As an initial matter, Bank of America does not argue that it is not a creditor or that loan modification is not an application under ECOA, nor could it so argue. ECOA and its implementing regulations define creditor broadly as "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." 12 C.F.R. § 202.2(1). A creditor includes "any assignee of any original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e).  The Complaint properly alleges that Bank of America  "regularly arranges for the extension, renewal, or continuation of credit." *See* 15 U.S.C. § 1691a(e); (Compl. at ¶ 49)(Bank of America regularly arranges for loan modifications).

Second,  Mr. Murfitt's five applications for a loan modification were "applications for credit" as defined by 15 U.S.C. § 1691a(d) and 12 C.F.R, § 202.2(j). Loan modification applications are covered by ECOA. *See Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011); *Watts v. JP Morgan Chase Bank, N.A.,* 2012 U.S. Dist. LEXIS 119980 (N.D. Cal. Aug. 22, 2012); *Piotrowski v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 14438 (D. Md. Jan. 22, 2013); *Ortega v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 11409 (N.D. Ohio Jan. 31, 2012).

///

1

2

### 2.    Bank of America violated ECOA by Failing to Provide Proper Notice Within 30 days of Plaintiff's Applications

3    As explained above, ECOA and Regulation B require that within thirty days

4    after receipt of an application for credit, a creditor shall provide written notice to an

5    applicant of its actions on the application or provide a notice of incompleteness if

6    the application is incomplete. 15 U.S.C. § 1691(d)(1); 12 C.F.R. § 202.9(a), (c); *see*

7    *also Errico v. Pac. Capital Bank*, 753 F. Supp. 2d 1034 (N.D. Cal. 2010)(finding

8    violations of ECOA for "Failure to Notify of Adverse Action" and "Failure to

9    Notify of Incomplete Application"); *Piotrowski v. Wells Fargo Bank, N.A.*, 2013

10    U.S. Dist. LEXIS 14438 (D. Md. Jan. 22, 2013)("[u]nder Subsection 1691(d)(1), a

11    creditor 'must provide notice of any action, whatever that action may be'"); *Ortega*

12    *v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 11409 (N.D. Ohio Jan. 31,

13    2012)(same).

14    Bank of America, now for the first time, informs Mr. Murfitt through its

15    Motion to Dismiss that it claims his  applications were incomplete – almost four

16    years after he first applied for a modification.  Motion at 7-9.  As an initial matter,

17    Plaintiff alleges that his applications were complete and that Bank of America

18    representatives confirmed his applications on were complete.  *See* section II.B.

19    above.  Indeed, it is self-evident that Mr. Murfitt could not have been approved for

20    the trial period plan he eventually received without a complete application. *Id*. This

21    alone is sufficient to create an issue of fact that cannot be resolved on a motion to

22    dismiss.  *See Twombley* at 556;  *Iqbal* at 1949 ("[c]ourts must construe the

23    complaint in the light most favorable to the plaintiff, accepting all well-pled factual

24    allegations as true, and drawing all reasonable inferences in plaintiff's favor").

25    Further, as Bank of America points out in its Motion at 8, a completed

26    application is one in which a creditor has received all the information that the

27    creditor regularly obtains and considers in evaluating applications for the amount

28    and type of credit requested. 12 C.F.R. § 202.2(f).  Bank of America further points

out that under Regulation B a creditor has the latitude to establish its own application process and to decide the type and amount of information it will require from credit applicants.  Motion at 8 (citing a Letter from Sandra F. Braunstein, Director of the Division of Consumer and Community Affairs, Federal Reserve Board (December 4, 2009)).  But Bank of America does not have the latitude to do so under HAMP.  Rather, Bank of America must evaluate the borrower in accordance with HAMP guidelines. As explained in the Federal Reserve Board letter cited by Bank of America.:

> For example, we understand that Treasury's HAMP guidelines state that a mortgage loan has been evaluated for HAMP when, among other things, a borrower has submitted a written request for consideration for a HAMP modification that includes borrower income and a reason for default or hardship, or a borrower has verbally provided sufficient information to allow the servicer to complete a Net Present Value analysis. Thus, if a borrower has submitted sufficient information for the mortgage loan to be evaluated under HAMP guidelines, then the borrower has submitted an "application" for an extension of credit.

Stoll Declaration, Exh. A.

In this case, Mr. Murfitt applied to Bank of America for a modification under HAMP, which provides detailed guidelines on the information to be obtained and considered under HAMP.  *See* Section II.A.3, above.  Since Mr. Murfitt's allegations are sufficient to show that he "submitted sufficient information for the mortgage loan to be evaluated under HAMP guidelines," he sufficiently alleges – for the purposes of this motion – that the five applications were complete.

Bank America next argues that the applications were incomplete because Plaintiff was asked for additional supporting information on multiple occasions.  Motion at 8.  But Bank of America cannot impose its own interpretation of the facts stated in the Complaint for the purposes of this Motion.  Indeed, it is well-documented that Bank of America regularly instructed its representatives "…to lie to customers and claim that Bank of America had not received documents it had

requested, and that it had not received trial payments (when in fact it had)."
Mercer Declaration, Exhibit 5, paragraph 5. Specifically, they "…were told that
admitting that the Bank received documents would 'open a can of worms' since the
Bank was required to underwrite the loan modification within 30 days of receiving
those documents, and it did not have sufficient underwriting staff to complete the
underwriting in that time." *Id*. Plaintiff is entitled to discovery from Bank of
America to determine precisely when the applications were complete.

Finally, Bank of America mischaracterizes *Dufay v. Bank of Am. N.T. & S.A.*,
94 F.3d 561 (9th Cir. Or. 1996), when it states the case resulted in "dismissing
ECOA claim because an application is 'complete' only when the creditor has all the
information is needs to review the loan for a modification." Motion at 9. The Ninth
Circuit in *Dufay* did not dismiss an ECOA claim, rather it vacated a summary
judgment in favor of Plaintiffs because there were "genuine issues of material fact
as to the beginning and ending dates from which to measure whether Bank of
America complied with the 30 day requirement of the ECOA." *Id*. at 566. Here
there are material issues of fact regarding when the applications were complete and,
as such, this issue cannot be resolved by the present motion.

### 3. Even if Plaintiff's Application was Incomplete, Bank of America violates ECOA by Failing to Provide a Notice of Incompleteness

Even if Mr. Murfitt's applications were incomplete, however, Bank of
America is still liable for violations of ECOA. Regulation B requires that within 30
days after receiving an application that is incomplete regarding matters that an
applicant can complete, the creditor shall notify the applicant either: (i) Of action
taken; or (ii) Of the incompleteness. 12 C.F.R. 202.9(c)(1). If additional
information is needed from an applicant, the creditor shall send a written notice to
the applicant specifying the information needed, designating a reasonable period of
time for the applicant to provide the information, and informing the applicant that

failure to provide the information requested will result in no further consideration being given to the application. *Id*. at (c)(2). As such, a failure to provide a notice of incompleteness within thirty days is a violation of ECOA. *See Errico v. Pac. Capital Bank*, 753 F. Supp. 2d 1034 (N.D. Cal. 2010)(finding violations of ECOA for "Failure to Notify of Incomplete Application").

The Complaint clearly provides facts sufficient to allege that Bank of America violated ECOA and Regulation B by failing to respond to Plaintiff and the Class within 30 days as required by ECOA and Regulation B. Complaint at ¶¶ 51, 65.[3]

Further, Plaintiff pleads more than enough facts to demonstrate Defendant's violation of Regulation B for failure to use reasonable diligence in determining whether Plaintiffs had submitted a completed application. *See* 12 C.F.R. § 202.2(f) (in reviewing an application for completeness, "the creditor shall exercise reasonable diligence in obtaining such information" necessary to decide whether to extend credit); *see also See Errico v. Pac. Capital Bank*, 753 F. Supp. 2d 103 (finding violations of ECOA for "Failure to Use Reasonable Diligence").

Plaintiff's Complaint goes into great detail about the alleged delay on the part of Defendants, which included requiring additional information and documents for nearly three years after the first alleged completed application on December 11, 2009, Complaint at ¶¶ 14-47.

Therefore, whether Plaintiff's applications were complete or incomplete, the Complaint alleges sufficient facts to state a claim for violations of ECOA.

### 4. Bank of America violated ECOA by Failing to Provide a Statement of Reasons for its Adverse Actions

ECOA has two separate notice provisions, "… § 1691(d)(1) and (d)(2) are independent provisions, each affording [the plaintiff] separate rights ... 1691(d)(1)

---

[3] To the extent Plaintiff has failed to expressly allege violations of Regulation B as part of its ECOA claim, Plaintiff can easily amend his complaint to so allege and requests permission from the court to do so.

... requires a creditor to 'notify the applicant of its action on the application' within thirty days ... 1691(d)(2) ... places a different requirement on the creditor, requiring them to give notice of adverse action...The statute's two sections require distinct actions." *Ortega v. Wells Fargo Bank, N.A.*,2012 U.S. Dist. LEXIS 11409 (N.D. Ohio Jan. 31, 2012); *see also Piotrowski v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 14438 (D. Md. Jan. 22, 2013)(finding separate notices are required).  Under Section 1161(d)(2), "each applicant against whom a adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." *Id.* § 1691(d)(2).  ECOA defines an "adverse action" as a: denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. *Id.*§ 1691(d)(6).  Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit. *Id.*

The Complaint provides facts sufficient to allege an adverse action on four separate occasions. First, Bank of America sent a "Notice of Intent to Accelerate" with a deadline to respond of September 15, 2010.  Complaint at ¶ 29.  Even a mistaken default notice can constitute an adverse action when combined with egregious conduct that goes beyond clerical error. *See Schlegel* 720 F.3d 1204 (9th Cir. Cal. 2013).  In this case, Bank of America had provided no response to Mr. Murfitt's applications on December 11, 2009 or August 13, 2010 (he had been current on his obligations at the time of both of these applications).  Complaint at ¶¶ 14, 18.  The failure by Bank of America to respond to Mr. Murfitt's applications with notices in accordance with ECOA and with HAMP  is egregious conduct. Further, a Notice of Intent to Accelerate could not have been provided if he had been approved for a loan modification.  As such, this is an adverse action.

Second, Bank of America finally sent Mr. Murfit a denial letter on November 30, 2010 stating his application had been denied due to the NPV.  Complaint at ¶

32.  This, however, is not a statement of reasons sufficient to allow "…rejected credit applicants to learn where and how their credit status is deficient … and … [allow] an applicant a chance to rectify misinformation or inadequate information." *Fischl*, 708 F.2d at 146.  Further, under HAMP guidelines, Mr. Murfitt is entitled to the inputs used to calculate the NPV so that he can provide evidence that inputs used were incorrect.[4]  Again, he was current on his obligations at the time of both of his applications to that date.  Complaint at ¶¶ 14, 18.  As such, this is an adverse action entitling Mr. Murfitt to a statement of reasons that he did not receive.

Third, Bank of America sent Mr. Murfitt another "Notice of Intent to Accelerate," dated December 3, 2010.  Complaint at ¶ 33.  He was current on his obligations at the time of both previous applications to date.  Complaint at ¶¶ 14, 18.  In accordance with *Schlegel*, this is an adverse action when combined with egregious conduct that goes beyond clerical error.  *See Schlegel*, 720 F.3d 1204 (9th Cir. Cal. 2013).  As stated above, sending this notice without providing a statement of reasons sufficient to meet the notice provision policy of ECOA and HAMP guidelines is just such egregious conduct.

Fourth, on March 3, 2011 Bank of America informed Mr. Murfitt that his applications on January 29, 2011 (where he was current on his loan obligations) had been denied due to negative NPV.  Complaint at ¶¶ 36, 37.  This is an adverse action that entitled Mr. Murfitt to a statement of reasons for denial that he did not receive.  Complaint at ¶¶ 37, 39.

### 5.   Plaintiff Properly Alleges Damages Under ECOA

ECOA allows a successful plaintiff to recover compensatory and punitive damages, equitable relief, and attorney fees and costs. 15 U.S.C. § 1691e(a)-(f). The Ninth Circuit explains that if a creditor violates any requirement under ECOA that

---

[4] Bank of America cites in a footnote (Motion at 11, footnote 6) *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 127728 (D. Md. Sept. 7, 2012) for the proposition that ECOA does not require specific calculations, however, HAMP and ECOA do require that Chase provide the specific *inputs* used for the NPV so that errors can be corrected.

1    creditor is liable for any actual damages sustained by an applicant.  *Anderson v.*
2    *United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. Or. 1982).

3        Plaintiff alleges that because of the excessive delay in review of his
4    application he incurred excess interest, late fees, and other fees he would not have
5    incurred.  Complaint at ¶ 50.  As stated above, one of the express purposes of
6    ECOA's notice requirements is to allow "…rejected credit applicants to learn where
7    and how their credit status is deficient.  The notice also provides an applicant a
8    chance to rectify misinformation or inadequate information." *Fischl*, 708 F.2d at
9    146.  Had Bank of America provided the notices required under ECOA, Plaintiff
10   could have rectified misinformation and/or inadequate information expeditiously
11   rather than the almost three-year delay that occured.  Therefore, as a direct result of
12   Bank of America's failure to provide the proper ECOA notices, he incurred actual
13   damages due to excess interest, late fees, and other fees.[5]

14       Bank of America suggests that since Plaintiff eventually received a
15   modification he suffered no actual damages.  Motion at 12.  That Plaintiff
16   eventually received a modification over three years after his first application,
17   however, does not "erase" its prior violations of ECOA.  *See Schlegel* 720 F.3d at
18   1204 ("[w]hile Wells Fargo now claims that its acceleration of the loan was an
19   unintentional error, and that the prior loan modification agreement remains in
20   effect, such assertions do not erase its prior revocation of credit for purposes of
21   ECOA").

22       Further, contrary to Bank of America's assertion,[6] the Ninth Circuit has held
23   that punitive damages may be awarded even absent a showing of actual damages.
24   *Anderson*, 666 F.2d at 1277.  Punitive damages may be awarded under ECOA

25   _____
26   [5] Bank of America's argument that late fees were incurred as a result of Plaintiff failing to make
     his mortgage payment is frivolous.  Plaintiff was current at the time the Complaint alleges Bank
     of America began violating ECOA.  Further, Plaintiff alleges that Bank of America's conduct
27   caused him to suffer *excess* interest, late fees, and other fees.
     [6] Bank of America's citation to a District Court of Minnesota case contrary to controlling Ninth
28   Circuit law, is not worthy of response.

absent specific intent to discriminate upon a showing that a "creditor acts in 'reckless disregard of the requirements of the law.'" *Id.*  The Complaint certainly provides sufficient facts to show that Bank of America failed to respond to Mr. Murfitt's five applications for credit within 30 days as required by ECOA to allow a fact-finder to determine that such a failure constitutes a "reckless disregard of the requirement of the law."

Defendant next urges that the request for injunctive relief must be stricken because a court cannot enjoin future conduct that would not impact the plaintiff. Motion at 13.  As with the other arguments, this one is premature.  ECOA specifically provides for equitable and declaratory relief as is necessary to enforce the requirements imposed under ECOA.  15 U.S.C § 1691e(c).  In addition, Plaintiff also seeks injunctive relief under California Business and Professions Code section 17203. It is generally true that "[i]njunctive relief is appropriate only when there is a threat of continuing misconduct." *Madrid v. Perot Systems Corp.,* 130 Cal.App.4th 440, 463 (2005); *see also People v. Toomey*, 157 Cal.App.3d [1,] 20 (1984).  Thus, while a trial court has broad authority to enjoin conduct that violates section 17200, in order to grant injunctive relief under section 17204 there must be a threat that the wrongful conduct will continue.  Further, "[i]njunctive relief will be denied if, ***at the time of the order of judgment***, there is no reasonable probability that the past acts complained of will recur, *i.e.*, where the defendant voluntarily discontinues the wrongful conduct." *California Service Station etc. Assn. v. Union Oil Co.* 232 Cal.App.3d 57 (1991)(emphasis added).  Thus, the time for determination of injunctive relief is when a judgment is obtained, not at the pleading stage.

Bank of America cites a United States Supreme Court case and an Eleventh Circuit Court of Appeals case in support of its argument.  Motion at 13.  However, both of the cited cases deal with the jurisdiction issue of standing, not whether there is injunctive relief available in cases where standing is otherwise met. *See City of*

1  *Los Angeles v. Lyons*, 461 U.S. 95 (1983)(no standing where there was no showing

2  that the municipality's revised policy on the use of choke holds would be applied

3  indiscriminately and thereby result in injury to respondent or other citizens); *see*

4  *also Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1341 (11th Cir.

5  2000)(no standing "[i]n the absence of a substantial likelihood that the arbitration

6  agreement will be enforced against the plaintiffs").  In this case, Plaintiff clearly has

7  standing because he has properly alleged damages under ECOA and in accordance

8  with Section 17200.

9      Bank of America, finally, argues that Plaintiff cannot recover attorneys fees.

10  Motion at 13.  However, whether Plaintiff is successful in his action is a matter is

11  another issue yet to be determined.

12      In sum, Plaintiff has met his obligation to allege damages under ECOA

13  sufficient to survive a Rule 12 challenge.

14      **B.    PLAINTIFF STATES A UCL CLAIM**

15      The Unfair Competition Law prohibits, and provides civil remedies for unfair

16  competition, which it defines as "any unlawful, unfair or fraudulent business act or

17  practice." Cal. Bus. & Prof. Code § 17200.  Its purpose "is to protect both

18  consumers and competitors by promoting fair competition in commercial markets

19  for goods and services." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002).

20      **1.    Plaintiff Properly Alleges Injury-in-Fact.**

21      To meet the standing requirements under the UCL, a party must (1) establish

22  a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e.,

23  economic injury, and (2) show that that economic injury was the result of, i.e.,

24  caused by, the unfair business practice or false advertising that is the gravamen of

25  the claim. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).  The

26  standing requirements originate from Proposition 64, which was designed to make

27  sure that private attorneys could not bring abusive UCL claims on behalf of clients

28  who had no actual business dealings with a defendant.  *Id*. at 321.

1   The Complaint indisputably alleges that Plaintiff had continued business

2   dealings with the Defendant (Complaint at ¶¶ 11-50) and has suffered genuine

3   economic harm as a result of its unlawful, unfair practices.  (Complaint at ¶¶ 50,

4   78).

5   Economic injury from unfair competition can take numerous forms. A

6   plaintiff may (1) surrender in a transaction more, or acquire in a transaction less,

7   than he or she otherwise would have; (2) have a present or future property interest

8   diminished; (3) be deprived of money or property to which he or she has a

9   cognizable claim; or (4) be required to enter into a transaction, costing money or

10   property, that would otherwise have been unnecessary. *Kwikset*, 51 Cal. 4th at 323.

11   The facts alleged in the complaint meet several of these categories including by

12   surrendering more in a transaction for modification and being deprived of late fees

13   and other default fees. Therefore, Plaintiffs have suffered injury-in-fact sufficient to

14   allege standing under the UCL.

15   That a plaintiff's economic injury come "as a result of" the unfair

16   competition in its plain and ordinary sense means "caused by," and requires a

17   showing of a causal connection or reliance on the alleged misrepresentation."

18   *Kwikset* , 51 Cal. 4th at 326.  Here, Plaintiff has expressly alleged that "in that Bank

19   of America charged excess interest, late fees, and other fees Plaintiff would not

20   have incurred but for Bank of America's excessive delay." Complaint at ¶ 78.  As

21   such, Plaintiff alleges sufficient damages to support his UCL claims.  *See  Rubio v.*

22   *Capital One Bank,* 613 F.3d 1195, 1204 (9th Cir. 2010)(*citing Troyk v. Farmers*

23   *Group, Inc.*, 171 Cal. App. 4th 1305, 1346 (2009) for the proposition that "payment

24   of extra money as a result of the defendant's action" is sufficient for standing).

25   Bank of America argues that it is Plaintiff's default that caused the excess

26   interest, late fees, and other fees.  Motion at 15.  However, it is important to

27   recognize that Plaintiff was current on his obligations when he first applied for a

28   modification, was told he qualified and that modification paperwork was on the

way.  That is, Plaintiff only defaulted *after* the Complaint alleges Bank of America violated both ECOA and the UCL.  Further, it is now well-documented that Bank of America purposely delayed the modification process so that Bank of America could collect more fees.  Mercer Declaration, Exhibit 5, paragraph 6.  And that borrowers were intentionally steered into foreclosure.  *Id*., paragraph 8.

Bank of America relies on *Juarez v. Suntrust Mortg., Inc.*, 2013 U.S. Dist. LEXIS 67850 (E.D. Cal. May 13, 2013) to support its argument Plaintiff cannot show damages after his default on the original loan.  Motion at 15.  But the *Juarez* Court made no such sweeping finding.  Rather, the *Juarez* Court found that "[t]he complaint lacks allegations that the Juarezes actually paid out of pocket such expenses." *Juarez* 2013 U.S. Dist. LEXIS 67850.  Here, the Complaint alleges that Mr. Murfitt paid $6,782.63 on December 28, 2010 and, again, paid amounts on March 25, 2011 which included these excess interest, late fees, and other fees.  Complaint ¶¶ 33, 34, 38.  Further, it is clear that a borrower *can* maintain a UCL damages claim based on servicer loan modification misconduct under HAMP after a default on the original loan.  *See Corvello v. Wells Fargo Bank, NA*, 2013 U.S. App. LEXIS 16415 (9th Cir. Cal. Aug. 8, 2013)(allowing UCL claim where servicer violated its obligations under HAMP trial modification); *see also West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 306 (Cal. App. 4th Dist. 2013)(allowing UCL claim for violations of HAMP guidelines and for making misrepresentations in conjunction with a HAMP application).[7]

## 2. Plaintiff Sufficiently Alleges "Unlawful" and "Unfair" Practices Under the UCL

The Complaint alleges that by violating ECOA, Bank of America has also violated the UCL.  Complaint at ¶ 76.  An act is "unlawful" under California's UCL if it violates an underlying state or federal statute or common law. *Cel-Tech*

---

[7] To the extent the district court cases cited by Bank of America stand for the proposition that a borrower cannot maintain an action for damages based on interest and fees after default, they are bad law in light of *West v. JPMorgan Chase*.

1   *Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180

2   (1999).   Therefore, if the Court upholds Plaintiff's ECOA claim the Court must

3   also uphold Plaintiff's UCL claim.

4        Further, the Complaint alleges two "unfair" practices.   First, is Bank of

5   America's promise to review Plaintiff for modification and instead proceeding with

6   the foreclosure process.  Complaint at ¶ 77(a).  This is commonly known as "dual

7   tracking" and is a violation of the UCL.  *See Jolley v. Chase Home Finance, LLC*,

8   213 Cal. App. 4th 872, 908 (Cal. App. 1st Dist. 2013)("…while dual tracking may

9   not have  been forbidden by statute at the time, the new legislation and its

10  legislative history may still contribute to its being considered 'unfair' for purposes

11  of the UCL").

12       Second, the Complaint alleges that Bank of America made false statements.

13  Complaint at ¶ 77(b).  The *Jolley* Court found that statements including - that it was

14  "highly probable," and "likely," and "look[ed] good"— that a modification of the

15  loan agreement would be approved were sufficient to support a cause of action for

16  misrepresentation and for violations of the "unfair" prong of the UCL.  *Jolley,* 213

17  Cal. App. 4th at 892 and 908.  Similarly, here, Plaintiff alleges that he was "pre-

18  approved for a trial period plan," "approved for a trial period plan," "bank records

19  indicated that Mr. Murfitt was approved for a trial modification," and even sent an

20  email "confirming that he qualified for a trial modification" as just a few examples

21  of many possible misstatements over the course of Mr. Murfitt's three-year-odyssey

22  with Bank of America.  Complaint at ¶¶ 14, 16, 17, 19.  As such, Plaintiff states a

23  UCL claim in accordance with *Jolley.  See also West v. JPMorgan Chase Bank,*

24  *N.A.*, 154 Cal. Rptr. 3d 285, 306 (Cal. App. 4th Dist. 2013)(UCL claim sufficiently

25  alleged where servicer "engaged in a practice of making TPP's that did not comply

26  with HAMP guidelines and the United States Department of the Treasury

27  directives; made misrepresentations regarding a borrower's right and ability to

28  challenge the bank's calculation of the NPV…").

Therefore, Plaintiff properly states a claim under the UCL for both "unlawful" and "unfair" business practices.

### 3. BOA Raises the "End Run" Theory Squarely Rejected by the Seventh Circuit

Bank of America next raises an argument that has been squarely rejected by the Seventh Circuit after extensive analysis of this "slogan." *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581-585 (7th Cir. Ill. 2012). In *Wigod*, the servicer, as it does here, advances a theory that the borrower's claims are displaced because they attempt an "end-run" on the lack of a private right of action under HAMP itself. *Id.* at 576; Motion at 17-18. The Seventh Circuit rejected this "end run" theory. *Wigod* 673 F.3d at 577. This Court should likewise reject this theory.

The end-run theory is built on the novel assumption that where Congress does not create a private right of action for violation of a federal law, no right of action may exist under state law, either. *Wigod* 673 F.3d at 581. However:

> [There is no] general rule that where a state common law theory provides for liability for conduct that is also violative of federal law, a suit under the state common law is prohibited so long as the federal law does not provide for a private right of action. Indeed, it seems the only justification for such a rule would be federal preemption of state law.

*See Wigod* 673 F.3d at 582 (*citing with approval Fletcher v. OneWest Bank, FSB*, 798 F. Supp. 2d 925 (N.D. Ill. 2011). In sum, the *Wigod* Court found that "[i]n short, a state-law claim's incorporation of federal law has never been regarded as disabling, whether the federal law has a private right of action or not." *Id.* Further, the Ninth Circuit recently reversed dismissal of claims for breach of contract, promissory estoppel, breaches of the covenant of good faith and fair dealing, and violations of California's Unfair Competition Law based on violations of trial period plans under HAMP. *Corvello v. Wells Fargo Bank, NA*, 2013 U.S. App. LEXIS 16415 (9th Cir. Cal. Aug. 8, 2013) (citing *Wigod* with approval); *see also West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 306 (Cal. App.

4th Dist. 2013)(violations of HAMP guidelines supports a UCL claim).

Therefore, under Ninth Circuit and California Appellate controlling authority Plaintiffs can state a cause of action under a state claim for violations of HAMP, including the UCL.

## IV.    CONCLUSION

The facts as alleged in the Compliant are easily sufficient to support each cause of action under the "plausibility standard" set forth in *Iqbal, supra*, 129 S. Ct. 1937, and its progeny in this circuit. *See Starr v. Baca*, 652 F.3d 1202, 1212-16 (9th Cir. 2011). Therefore, the Court should deny, in its entirety, Defendant's motion to dismiss.


Dated:  September 9, 2013.               Respectfully submitted,

                                         LAW OFFICE OF ERIC ANDREW MERCER

                                         By: */s/ Eric Andrew Mercer*
                                         _____
                                             ERIC ANDREW MERCER
                                             Attorney for Plaintiff

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that this document filed through the ECF system will be sent

3

electronically to the registered participants as identified on the Notice of Electronic

4

File (NEF) and paper copies will be sent to those indicated as non-registered

5

participants on September 9, 2013.

6

7

Dated:       September 9, 2013     LAW OFFICE OF ERIC ANDREW
                                    MERCER

8

9

                                   By: */s/ Eric Andrew Mercer*

10

                                   ERIC ANDREW MERCER
                                   Attorney for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28