UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 13-01182 JGB (SPx)** | Date | October 22, 2013 |
| Title | *Flint W Murfitt v. Bank of America NA et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):        Attorney(s) Present for Defendant(s):

None Present                                                 None Present

**Proceedings:**   Order (1) GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss (Doc. No. 9); and (2) VACATING the October 21, 2013 Hearing  (IN CHAMBERS)

Before the Court is Defendant Bank of America, N.A.'s motion to dismiss the complaint. (Doc. No. 9.)  The Court finds this matter suitable for resolution without a hearing pursuant to Local Rule 7-15.  After considering all papers submitted in support of and in opposition to the Motion, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss.

## I.  BACKGROUND

On July 3, 2013, Plaintiff Flint Murfitt ("Plaintiff" or "Murfitt") filed this complaint against Defendant Bank of America, N.A. ("Defendant" or "Bank of America") and fictitious entities for violations of (1) the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d) and (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. (Compl., Doc. No. 1.)  On August 23, 2013, Bank of America filed a Motion to Dismiss ("MTD," Doc. No. 9) the complaint and requested judicial notice of several documents in support thereof ("RJN," Doc. No. 9)[1].  Plaintiff filed a memorandum in opposition to

---

[1] The Court grants Defendant's requests for judicial notice.  Exhibits A through D to the Declaration of Nadine San Antonio are copies of letters referenced in the complaint.  See Dreiling v. Am. Express Co., 458 F.3d 942, 946 n.2 (9th Cir. 2006) (taking judicial notice of documents referenced in the complaint).  Exhibit A to the Declaration of Laura A. Stoll is a copy of a letter from the Director of the Federal Reserve Board, which is posted on the Federal Reserve's website.  See Skilstaf v. CVS Caremark Corp., 669 F.3d 1005, 1016 n.9 (9th Cir. (continued . . . )

Defendant's MTD on September 9, 2013 and also requested judicial notice of several documents.[2] ("Opp'n," Doc. No. 11.) Defendant replied on September 26, 2013. ("Reply," Doc. No. 13.)

The complaint alleges the following facts. On June 15, 2008 Plaintiff purchased a home at 2279 N. Blando Road, Palm Springs, California ("Subject Property") with a loan from Bank of America in the amount of $270,000. (Compl. ¶ 11.) Realizing he would be unable to sustain making payments on the mortgage, on December 11, 2009, Plaintiff applied for loan modification with Defendant pursuant to the government's Home Affordable Modification Program ("HAMP"). (Id. ¶¶ 13, 14.) Plaintiff was current on his payments at this time. (Id. ¶ 14.) Plaintiff alleges that he provided all the information requested by Bank of America over the telephone, and was informed that he was "pre-approved" for a loan modification. (Id.) After several months, and many attempts to determine the status of his loan modification, on March 29, 2010, Murfitt was informed that Defendant had already approved him for the trial period of the HAMP loan modification on the day he applied for the program, December 11, 2009. (Id. ¶¶ 16-17.)

On April 19, 2010, Plaintiff alleges that per Defendant's request, he submitted additional financial documents and an updated modification application. (Id. ¶ 18.) Plaintiff then received an email from Bank of America representative "Porter" confirming that he qualified for a trial modification on May 20, 2010. (Id. ¶ 19.) The next day, Bank of America representative "Spurlock" confirmed that it received all necessary documents and sent them to underwriting. (Id. ¶ 20.) Then, on June 9, 2010, Bank of America representative "Lawrence" contacted Plaintiff and informed him that the application review was complete, and that Plaintiff would receive his trial payment notification by mail soon. (Id. ¶ 21.)

---

( . . . continued)
2012) ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute.") (internal quotations omitted).

[2] The Court grants Plaintiff's requests for judicial notice, with one exception. Exhibits 1, 2, 4, and 5 are directives of the Home Affordable Modification Program ("HAMP"), issued by the Department of the Treasury and available on the internet. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (permitting judicial notice of undisputed matters of public record). Exhibit 3 is a duplicate of Defendant's Exhibit A to the Stoll Declaration and is noticeable for the reasons stated above. However, Exhibit 6 is a Declaration of Simone Gordon filed in In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation, No 1:10-md-02193-RWZ (D. Mass. 2010). Defendant contests the facts presented in the declaration and thus it is not appropriate for judicial notice. See Lee, 250 F.3d at 690; Stamas v. County of Madera, 795 F. Supp. 2d 1047, 1061 (E.D. Cal. 2011) (rejecting request to judicially notice facts in declarations from a separate action). Therefore, the Court grants Plaintiff's requests for judicial notice of Exhibits 1 through 5 and denies the request with respect to Exhibit 6.

On June 15, 2010, Defendant's representative "Blazedale" informed Plaintiff that he would have to wait another thirty to sixty days for the trial modification document to arrive. (Id. ¶ 22.) Plaintiff alleges he contacted Bank of America seventeen times between June 15, 2010 and August 3, 2010 to determine the status of his application, but he did not receive any information. (Id. ¶ 23.) Finally on August 10, 2010, Bank of America representative "Lawrence" contacted Murfitt and requested that he provide more financial information. After many failed attempts to get information about his application, Plaintiff received another call from Lawrence on August 27, 2010 informing him that he would receive his loan modification papers within thirty days. (Id. ¶¶ 26-28.)

Next, Murfitt received a Notice of Intent to Accelerate the payments on his loan with a deadline to respond of September 15, 2010. (Id. ¶ 29.) Then, contrary to the notice, Murfitt received another letter from Bank of America informing him that he will receive information about his eligibility for the loan modification within thirty days with three possible responses. (Id. ¶ 30.) Plaintiff alleges that he did not hear a response within thirty days, and after six failed attempts to get information about his loan modification, on November 30, 2010, Bank of America sent him a letter informing him that his loan modification application had been denied for failing the Net Present Value (NPV) evaluation. (Id. ¶¶ 31-32.)

Bank of America sent Murfitt another Notice of Intent to Accelerate on December 3, 2010 because of a default of $6,782.63 on his loan, and on December 28, 2010, Plaintiff cured the default. (Id. ¶¶ 33-34.) On January 14, 2011, Bank of America representative "Parish" informed Plaintiff that the November 20, 2010 denial letter was sent as a result of a computer error, and that Plaintiff's loan modification application had not been declined. (Id. ¶ 35.)

On January 29, 2011, Plaintiff submitted a new application for loan modification under the HAMP program. (Id. ¶ 36.) On March 3, 2011, Bank of America representative "Debbie" informed Plaintiff that his application had been denied due to negative NPV. (Id. ¶ 37.) Murfitt requested but never received the inputs used for the NPV. (Id. ¶ 37.) On March 25, 2011, Murfitt made loan payments in the amounts of $88.69, $67.40 and $2,302.07 bringing him completely current on the loan. (Id. ¶ 38.)

From April 2011 to July 2011, Plaintiff attempted, but again failed to obtain the NPV inputs from Defendant. He also received contradictory information regarding his loan modification from Bank of America representatives, with some stating that the bank continued to review his HAMP modification application, and others saying that he had been denied. (Id. ¶ 39.)

On March 25, 2012, Murfitt submitted another new loan modification application. (Id. ¶ 41.) Plaintiff alleges that between March 2012 and August 2012, Plaintiff and Defendant had over sixty contacts where Plaintiff provided documents that he had previously submitted. (Id. ¶ 42.) On July 25, 2012, Defendant informed Murfitt that a Trustee's Sale had been set for his property for September 17, 2012. (Id. ¶ 43.) On August 16, 2012, Bank of America posted a Notice of Trustee Sale on the Subject Property listing the sale for September 7, 2012. (Id. ¶ 44.)

On August 31, 2012, Murfitt received an electronic correspondence from Bank of America stating that his loan modification was in the last stages of review. (Id. ¶ 46.) Before the scheduled sale on September 7, 2012, Bank of America offered Murfitt a trial period plan for the loan modification, which he accepted. (Id. ¶ 47.) In January 2013, Bank of America converted the trial period plan to a permanent modification, and he began paying a new payment amount. (Id. ¶¶ 49-50).

Plaintiff alleges that due to the delay in review of the loan modification, Bank of America charged him excess interest, late fees, and other fees he would not have incurred but for Bank of America's excessive delay. (Id. ¶ 50.)

## II. LEGAL STANDARD[3]

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556). Recently, the Ninth Circuit clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party

---

[3] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

### III. DISCUSSION

**A. ECOA Claim**

  **1. Completeness of Plaintiff's Application**

Defendant first argues that Plaintiff has not stated a claim for violation of 15 U.S.C. §§ 1691(d)(1) or 1691(d)(2) because he failed to allege specific facts to demonstrate that he submitted a completed application for credit. (MTD at 7.) Defendant contends that because it asked Plaintiff to provide additional financial documents on multiple occasions, Plaintiff's application was incomplete. (Id. at 7-9.) An application is considered "complete" when the:

> creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral). The creditor shall exercise reasonable diligence in obtaining such information.

12 C.F.R. § 202.2(f); see Dunfay v. Bank of Am. N.T. & S.A. of Oregon, 94 F.3d 561, 564 (9th Cir. 1996) (an application is complete once the creditor receives "the last piece of information regularly obtained in the loan application process") (citing 12 C.F.R. § 202.2(f)); High v. McLean Fin. Corp., 659 F. Supp. 1561, 1564 (D. D.C. 1987) ("[A]pplication is considered 'complete' not when the applicant completes it . . . but when the creditor has obtained verifying information it ordinarily requires to evaluate a loan.") (citing 12 C.F.R. §202.2(f)). Within thirty days of receiving a completed application for credit, a creditor must notify the applicant of its action on the application. 15 U.S.C. § 1691(d)(1).

Plaintiff alleges that Defendant made statements and took actions which suggested that his application was complete and it was in the process of making a decision regarding the application. (See Compl. ¶¶ 14, 17-21, 28, 30, 32, 37, 39, 46, 47-49.) (See, e.g., id. ¶ 17 ("'Judy' confirmed that the bank's records indicated that Mr. Murfitt was approved for the trial modification on December 11, 2009."); id. ¶ 21 ("Bank of America representative Josh Lawrence contacted Mr. Murfitt and confirmed that his review was complete and that Mr. Murfitt would receive his trial payment notification soon by email."). See also Errico v. Pacific Capital Bank, N.A., 753 F. Supp. 2d 1034, 1043 (N.D. Cal. 2010). At this preliminary stage, the Court finds

that Plaintiff has plead sufficient facts such that he can plausibly be granted relief. Id. ("At this, the pleading stage, the Court does not find it implausible that Plaintiffs' application for all three loans, including the condominium loan, could be considered complete for ECOA purposes as of August 10, 2007."). Whether Plaintiff's application was "complete" pursuant to the statute is a question of fact, and will depend on the type of information the Defendant regularly obtains and considers in evaluating credit applications as well as Defendant's diligence in obtaining such information. See id. (citing Dufay v. Bank of America, 94 F.3d 561, 564-65 (9th Cir.1996) (vacating district court's issuance of summary judgment because material facts remained as to when plaintiffs' application was completed)); see also King v. JPMorgan Chase Bank, No. 11-CV-01880-KLM, 2013 WL 3353879, at *4 (D. Colo. July 3, 2013) ("If Defendant did not use reasonable diligence in obtaining the information necessary to complete Plaintiff's credit application, there exists a genuine issue of material fact as to whether Plaintiff's credit applications were complete for purposes of the ECOA.").

For the foregoing reasons, Plaintiff has pled sufficient facts regarding the completeness of his application to plausibly be eligible for relief.

   **2. Adverse Action**

Defendant's second contention is that Plaintiff has failed to state a claim for violation of 15 U.S.C. § 1691(d)(2) because he has not alleged facts to demonstrate any adverse action. (MTD at 9.) Section 1691(d)(2) requires creditors to provide "[e]ach applicant against whom adverse action is taken . . . a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). Section § 1691(d)(6) defines an adverse action as a "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). A revocation of credit is defined as the annulling, repealing, rescinding or canceling a right to defer payment of a debt. See Schlegel v. Wells Fargo Bank, N.A., 720 F.3d 1204, 1211 (9th Cir. 2013.)

The case at bar is analogous to Schlegel. There, plaintiff received a loan from defendant, but fell behind on his payments. Id. at 1206. Defendant proposed a loan modification extending the maturity date of the loan, which plaintiff accepted. Id. For the next six months, Defendant repeatedly sent default notices and denied that the loan was modified. Id. at 1207. Plaintiff diligently attempted to clarify that his modification was complete, but to no avail. Defendant eventually acknowledged that the default notices sent to plaintiff were erroneous, but the Ninth Circuit held that defendant's "prolonged non-responsiveness, and its affirmative statements regarding loan acceleration and default . . . plausibly gave rise to the claim that [defendant] terminated the loan modification agreement and thereby revoked the [plaintiffs'] credit for purposed of § 1691(d)(6)." Id. at 1211. The Schlegel court ultimately held that the complaint pled sufficient facts to allege that defendant took adverse action on plaintiffs' loan modification application, thereby requiring defendant to supply a statement of reasons. Id.

Similarly, here, Defendant's representatives informed Plaintiff that his loan modification application was "already approved," (Compl. ¶¶ 14, 17, 19, 20-22, 28), and informed him that he would receive his modification paperwork soon. (Id. ¶¶ 21, 28.) Similar to Schlegel, after the parties' purportedly agreed to the modification, Defendant informed Plaintiff verbally and in a

letter that his loan modification application had been denied, sent him two notices of intent to accelerate his debt payments, and set a trustee's sale for his house, even posting a sign on Plaintiff's property regarding the sale. (See id. ¶¶ 29, 32-33, 37, 44-45.) These facts are sufficient to allege that Defendant revoked the loan modification previously offered. Additionally, analogous to Schlegel where the plaintiffs diligently tried to clarify the discrepancy, Plaintiff here repeatedly contacted Defendant, attempting to determine the status of his application.

Taken together, these facts plausibly give rise to the claim that Bank of America took adverse action in regards to Plaintiff's application for loan modification by revoking the loan modification that it initially approved. The fact that Defendant eventually granted the loan modification does not discount its earlier actions regarding Plaintiff's application in light of the three years it took for Plaintiff to receive the modification. See Schlegel, 720 F.3d at 1211 ("While Wells Fargo now claims that its acceleration of the loan was an unintentional error, and that the prior loan modification agreement remains in effect, *such assertions do not erase its prior revocation of credit for purposes of ECOA.*") (emphasis added).

Defendant further argues that since Plaintiff was delinquent on his mortgage payments, Defendant's actions could not be considered "adverse action" under the statute. (MTD at 10.) The relevant portion of § 1691(d)(2) provides that adverse action does not include "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit." 15 U.S.C. § 1691(d)(2). The plain language of the statute demonstrates its inapplicability. Here, Defendant did not "refuse to extend additional credit under an existing credit arrangement." Id. Rather, Defendant first approved the loan modification, and then subsequently revoked it. Therefore, the Court must follow the precedent set in Schlegel. See 15 U.S.C. § 1691(d)(6) (defining "adverse action" as a "denial or *revocation of credit*, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested") (emphasis added); Schlegel, 720 F.3d at 1211 ("[The complaint] plausibly gave rise to the claim that [defendant] terminated the loan modification agreement and thereby revoked the [plaintiffs'] credit for purposed of § 1691(d)(6).").

Even if Defendant's actions could be considered a "refusal to extend additional credit under an existing credit arrangement," the complaint alleges that Plaintiff was current on his payments when he first applied for the loan in December 2009. (Compl. ¶ 14.) Thus, he was neither delinquent, nor in default when he initially applied and § 1691(d)(2) does not apply. Cf. Rockridge Trust v. Wells Fargo, N.A., __ F. Supp. __, 2013 WL 5428722, at *17 (N.D. Cal. 2013) ("Here, in the fall of 2009, [plaintiff] sought an extension of credit, a loan modification, while he was delinquent in payments on initial credit arrangement, his mortgage loan. In these circumstances, there was no "adverse action" within the meaning of the ECOA. To the extent that a new credit agreement was granted and then revoked, the allegations in the FAC show that Shahani received written notice of the *denial* of his loan modification application within thirty days of its submission . . . .") (emphasis added).

For the foregoing reasons, Plaintiff has pled sufficient facts to plausibly allege he suffered an adverse action under the statute.

### 3. Recoverable Damages

For a violation of the ECOA, a plaintiff may be entitled to actual, compensatory and punitive damages, along with equitable relief and recovery for costs and attorney fees. 15 U.S.C. § 1691e; Errico, 753 F. Supp. 2d at 1041; Anderson v. United Finance Co., 666 F.2d 1274, 1277 (9th Cir. 1982). Section 1691e(a) states that "[a]ny creditor who fails to comply with any requirement imposed under this section shall be liable to the aggrieved applicant for any actual damages." 15 U.S.C. § 1691e(a). Damages may include out-of-pocket monetary losses, injury to credit reputation, and mental anguish, humiliation or embarrassment. Anderson, 666 F.2d at 1278. An aggrieved party may also receive punitive damages under the ECOA. 15 U.S.C. § 1691e(b). Punitive damages are not compulsory, but they may be awarded even if actual damages are not. Anderson, 666 F.2d at 1278. An aggrieved party may be entitled to punitive damages "pursuant to § 1691e(b) if (1) the creditor wantonly, maliciously or oppressively discriminates against an applicant, or (2) the creditor acts in reckless disregard of the requirements of the law, even though there was no specific intention to discriminate on unlawful grounds." Id. at 1278. Finally, if there is a successful action under § 1691e(a), (b), or (c), then plaintiff can recover costs of the action including reasonable attorney fees. 15 USC § 1691e(d).

First, Defendant argues that Plaintiff has not stated a claim for actual damages because he has not explained how his injury was caused by Defendant's violation of the ECOA. (MTD at 12.) "As a preliminary matter, a procedural violation of the notice provisions of ECOA may provide the basis for a cause of action even without regard to allegations of discrimination." Errico, 753 F. Supp. 2d at 1042. Plaintiff alleges injury suffered as a result of Defendant's excessive delay in failing to timely notify him about his loan modification, and failing to provide a statement of reasons for its adverse actions in violation of ECOA. (Compl. ¶ 50.) Defendant's delay allegedly caused Plaintiff to pay excess interest on his loan and to incur late fees while waiting for a response. (Id.) Even construing the allegations in Plaintiff's favor, the Court finds that the complaint lacks sufficient facts to connect Defendant's purported violation of the ECOA to actual damages he suffered as a result. See Coulibaly v. J.P. Morgan Chase Bank, N.A., CIV.A. DKC 10-3517, 2012 WL 3985285, at *7 (D. Md. Sept. 7, 2012) aff'd sub nom. Coulibaly v. JP Morgan Chase Bank, N.A., 12-2230, 2013 WL 1811879 (4th Cir. May 1, 2013) ("Even when viewed in a light most favorable to Plaintiffs, this evidence does not specifically prove out-of-pocket losses during the timeframe relevant to Plaintiffs' ECOA claim (i.e., April 15, 2009 to September 15, 2009) because it fails to establish the requisite causal link between Chase's *delay* in responding to the March 2009 Application and Plaintiffs' purported injury."). Plaintiff has not provided sufficient factual allegations to explain how Defendant's failure to provide notice or a statement of reasons caused him to incur excess interest or late fees. Accordingly, the Court DIMISSES Plaintiff's claim for actual damages under the ECOA WITH LEAVE TO AMEND.

Defendant goes on to argue that because "Plaintiff cannot demonstrate that he suffered any actual damages stemming from the ECOA claim, he is unable to recover punitive damages." (MTD at 12.) Defendant wholly misstates the law. In fact, punitive damages may be awarded even if actual damages are not. Anderson, 666 F.2d at 1278. Punitive damages are appropriate

if the defendant's conduct was wanton, malicious, or oppressive, or if the defendant acted in reckless disregard of the law. See id. The Court finds that Plaintiff has pled sufficient facts to plausibly be entitled to punitive damages. Again construing the facts in favor of Plaintiff, the complaint alleges that Plaintiff submitted a loan modification application on five different occasions, and Defendant repeatedly failed to inform him about the status of the application over a period of three years. The Court finds these allegations sufficient to plausibly demonstrate that Defendant exhibited "reckless disregard of the requirements of the law." id.; see 15 U.S.C. § 1691e(b) (listing the factors to be considered in awarding punitive damages, including "the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional").

Third, Defendant contends that Plaintiff cannot state a claim for attorney's fees because he cannot recover any monetary or equitable relief. (MTD at 13.) For the reasons discussed above, Plaintiff has demonstrated a plausible theory of recovery for punitive damages. Thus, Plaintiff has a plausible basis for recovery of costs of and attorney fees since these awards are derivative. 15 USC § 1691e(d) (providing a fee award "[i]n the case of any successful action" for actual damages, punitive damages, or equitable and declaratory relief).

Lastly, Defendant argues that Plaintiff has not adequately pled a right to equitable relief. (MTD at 13.) An "[e]quitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of *any real or immediate threat* that the plaintiff *will be wronged again*." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (emphasis added). Plaintiff has already received a loan modification, and has pled no facts to indicate that he plans on submitting another application for loan modification. Thus, he has failed to demonstrate any "real or immediate threat" that Defendant will wrong him again. Therefore, the Court GRANTS Defendant's motion to dismiss Plaintiff's claim for equitable relief under § 1691e(c) WITH LEAVE TO AMEND.

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss with regard to punitive damages and attorneys' fees and costs under the ECOA and GRANTS Defendant's motion as to Plaintiff's claim for actual damages and equitable relief under the ECOA WITH LEAVE TO AMEND.

**B. UCL Claim**

   **1. Standing**

The purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. See Barquis v. Merchants Collection Assn., 7 Cal.3d 94, 110 (1972). The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

UCL claims are broad in scope and a plaintiff need only prove one of its criteria to be successful in his or her cause of action. See McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1471 (2006) ("The scope of the UCL is quite broad. Because the statute is framed in the

disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition.") (citations omitted). Because unfair competition includes any "*unlawful* . . . business act or practice," Cal. Bus. & Prof. Code § 17200 (emphasis added), the UCL permits violations of other laws to be treated as unfair competition that is independently actionable. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163 (1999). Therefore, "[v]irtually any law—federal, state or local—can serve as a predicate for an action under Business and Professions Code section 17200." Ticconi v. Blue Shield of California Life & Health Ins. Co., 160 Cal. App. 4th 528, 539 (2008).

In 2004, Proposition 64 amended the UCL to provide that a private person has standing to bring a UCL action only if he or she "has suffered an injury in fact, and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; Troyk v. Farmers Group, Inc. 171 Cal. App. 4th 1305, 1335 (2009) ("A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused by unfair competition."). Defendant argues that Plaintiff has not alleged facts to establish that any injury in fact or money or property loss occurred as a result of Bank of America's allegedly wrongful actions. (MTD at 15.)

The UCL requires that plaintiff suffer an injury "as a result of" unfair competition. Cal. Bus. & Prof. Code § 17204. The plain and ordinary meaning of that term is "'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." Hall v. Time Inc., 158 Cal. App. 4th 847, 855 (2008); see also Troyk v. Farmers Group, Inc., 171 Cal. App. 4th at 1349 ("[T]he phrase 'as a result of' connotes an element of *causation* (i.e., [plaintiff] lost money *because of* [defendants'] unfair competition)"); Medina v. Safe–Guard Products, Internat., Inc., 164 Cal.App.4th 105, 115 (2008) ("[T]he 'as a result' language imports a *reliance or causation* element into [§ 17204].")

As discussed above, Plaintiff has not provided sufficient facts to connect his alleged injury to Defendant's conduct. Although Plaintiff may have suffered an economic injury in the form of excess interest and late fees, see Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 322 (2011) (requiring some form of economic injury for a UCL violation), he has not adequately connected the injury to Defendant's "excessive delay." (Compl. ¶ 78.) It is equally plausible that Plaintiff's injury was a result of his failure to make payments under the loan agreement. See Juarez v. Suntrust Mortg., Inc., 2013 WL 1983111, at *14-15 (E.D. Cal. May 13, 2013). Plaintiff must provide facts to demonstrate that Defendant's violations of the ECOA, failure to review Plaintiff's applications for modification and to provide meaningful information, false statements, and duplicate requests for information caused him to incur excess interest, late fees, and other fees that he would not otherwise have incurred. (Compl. ¶¶ 76-78.) The Court therefore DISMISSES WITH LEAVE TO AMEND Plaintiff's UCL claim for lack of standing.

2.  **Unlawful Claim**

To adequately plead a UCL claim based on the unlawful prong, plaintiff must allege that the defendant violated some state, federal or local law. See Hale v. Sharp Healthcare, 183 Cal. App. 4th 1373 (2010). Here, Plaintiff's UCL claim is partially premised on alleged violations of the ECOA. (Compl. ¶ 76.) The Court determined above that Plaintiff has alleged sufficient facts

to allege an ECOA violation, therefore Plaintiff has pled a corresponding UCL claim under the unlawful prong. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163 (1999) (finding that an act is unlawful under UCL if it violates an underlying state, federal or common law)

### 3. Unfair Claim

Next, Plaintiff alleges that Defendant's conduct was "unfair" under the UCL. The Ninth Circuit defines an unfair business practice as one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. See McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008).

Plaintiff makes two separate allegations with regards to the unfair prong of the UCL. First, Plaintiff alleges that "Defendants promised, but failed to review Plaintiff's applications for modification in accordance with HAMP guidelines and, instead proceeded with the foreclosure process on the Subject Property." (Compl. ¶ 77(a).) This process is known as dual tracking and courts have found it "unfair" for purposes of the UCL. See Jolley v. Chase Home Finance, LLC., 213 Cal. App. 4th 872, 907 (2013). Nevertheless, Defendant argues that "[a]ll of Plaintiff's allegations are based on alleged violations of unspecified 'HAMP Guidelines'" and are not viable because there is no private right of action under HAMP. (MTD at 17.) "Numerous courts have rejected this argument and so does this Court." Sutcliffe v. Wells Fargo Bank, N.A., 283 F.R.D. 533, 553 (N.D. Cal. 2012) (rejecting "Wells Fargo['s] conten[tion] that Plaintiffs' claims are an impermissible attempt to enforce the HAMP guidelines under state law, even though HAMP does not provide a private right of action").

Regardless of whether there is a private right of action under HAMP, Plaintiff has stated sufficient allegations based on Defendant's unfair practices. See W. v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780, 806 (2013) ("Liberally construed, the third amended complaint alleged Chase Bank engaged in a practice of making TPP's that did not comply with HAMP guidelines . . . made misrepresentations about pending foreclosure sales . . . . Under such allegations, Chase Bank engaged in unfair business practices under any of the three definitions."). Plaintiff secondarily alleges that Defendant "routinely made false statements, failed to provide meaningful information, and made duplicate requests for information already received over several years." (Compl. ¶ 77(b).) Plaintiff has sufficiently alleged a violation under the unfair prong of the UCL.

For the foregoing reasons, the Court DISMISSES Plaintiff's UCL claim for lack of standing WITH LEAVE TO AMEND, but DENIES Defendant's motion to dismiss the UCL claim on all other grounds.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss and DISMISSES the complaint WITH LEAVE TO AMEND.

Plaintiff shall file his First Amended Complaint by October 31, 2013. The Court VACATES the October 21, 2013 hearing.

**IT IS SO ORDERED.**